IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RESER'S FINE FOODS, INC.,

               Plaintiff,

      v.

WALKER PRODUCE CO. et al.,

               Defendants.

No. CV 06-1041-MO

OPINION & ORDER

**MOSMAN, J.,**

      Before the court is defendant Walker Produce Co.'s ("Walker Produce") motion for summary judgment challenging personal jurisdiction (#33). Because I find the court lacks personal jurisdiction over this defendant, the motion is GRANTED.

      Walker Produce filed its motion under Fed. R. Civ. P. 56 challenging only personal jurisdiction. This motion is more properly considered a motion to dismiss under Fed. R. Civ. P. 12(b)(2). *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). In fact, the parties agree I am to apply the burden of proof applicable to jurisdictional motions to dismiss where no evidentiary hearing is held. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 4-5; Def.'s Reply Mem. at 3-4. Thus, I construe Walker Produce's motion as a motion to dismiss.

PAGE 1 - OPINION & ORDER

## BACKGROUND

Viewed in the light most favorable to plaintiff Reser's Fine Foods, Inc. ("Reser's"), the relevant facts are as follows. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). Reser's is an Oregon-based food processing company. Walker Produce is an Idaho company that grows and sells potatoes. It does not have an office, farm, or any other presence in Oregon. Reser's purchases equipment for its processing facilities from Idaho Steel and has had a long-standing relationship with this company. At some point, Reser's chief operating officer, Mark Reser, mentioned to Davis Christensen, Idaho Steel's representative, that Reser's was interesting in buying Idaho potatoes to be processed at its Kansas facility. Mr. Christensen indicated that he had contacts in the Idaho potato business and volunteered to relay Reser's interest to them. Mr. Reser approved Mr. Christensen's suggestion.

Mr. Christensen told Walker Produce about Reser's interest in buying potatoes, and he gave Reser's contact information to Walker Produce.[1] In February 2005, a representative from Walker Produce called Reser's headquarters in Oregon to set up a meeting. The meeting was held shortly thereafter at Reser's Oregon facility and two representatives from Walker Produce attended. The parties did not reach an agreement at that time, but Reser's asked Walker Produce to send a test batch of potatoes to its Kansas facility, and Walker Produce agreed. Subsequently, Walker Produce negotiated a Potato Supply Agreement with one of Reser's employees based at its Kansas facility. In late March 2005, Reser's personnel traveled to Idaho and toured Walker Produce's facilities. During that trip, the parties formalized their agreement, which is the subject of this litigation. Reser's Kansas employee who negotiated the contract with Walker Produce signed the contract on Reser's behalf.

---

[1]The parties dispute whether the court can consider hearsay statements contained in Walker Produce's supporting affidavits, which relate to what Mr. Christensen told Walker Produce. However, this issue relates to a dispute of fact that must be resolved in favor of Reser's. *Mattel, Inc.*, 354 F.3d at 862.

PAGE 2 - OPINION & ORDER

## DISCUSSION

In order to defeat defendant's motion, Reser's must make a prima facie showing that the court has personal jurisdiction over Walker Produce. *Mattel, Inc.*, 354 F.3d at 862. This burden is met where the plaintiff "demonstrate[s] facts that, if true, would support jurisdiction." *Id.* The court only has personal jurisdiction over a defendant when both the forum state's long-arm statute and federal due process are satisfied. *Id.* at 863. Oregon law permits courts to exercise personal jurisdiction to the extent allowed by the Due Process Clause of the Constitution; thus, I only examine whether exercising jurisdiction over Walker Produce is consistent with due process. Or. R. Civ. P. 4(L); *State, ex rel. Hydraulic Servocontrols Corp. v. Dale*, 657 P.2d 211, 212-13 (Or. 1982).

Where the defendant is not subject to the court's general jurisdiction, due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts employ a three-part test to determine if "minimum contacts" and "fair play and substantial justice" are satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 1120, 1128-29 (9th Cir. 2004). The "purposeful availment" requirement ensures the defendant will be haled into court in a particular jurisdiction based on its own actions and not "'as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *Id.* at 1129 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

PAGE 3 - OPINION & ORDER

In contract cases, simply contracting with a forum resident is not enough to confer personal jurisdiction over the defendant. *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). In this case, for instance, the bare fact that Walker Produce's contract is with an Oregon-based company is not enough to confer jurisdiction. Rather, the court must determine whether the defendant formed "continuing relationships and obligations with citizens of [the forum state]." *Burger King Corp.*, 471 U.S. at 473; *Roth*, 942 F.2d at 621. In making this determination, the Supreme Court instructs that the following factors should be considered: "prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479. This court has further identified the relevant factors as follows:

> 1. Who initiated the contact?
> 2. What were the goods' origination and destination?
> 3. What is the value of the goods involved in the disputed transaction?
> 4. How many contacts did defendant have with the forum?
> 5. Where did contract negotiation take place?
> 6. Are there prior dealings or future consequences anticipated between the parties that relate to the contract in dispute?

*Naumes, Inc. v. Alimentos Del Caribe,* 77 F. Supp. 2d 1158, 1163 (D. Or. 1999).

Here, Walker Produce initiated the direct contact between the parties when it called Reser's and inquired about setting up a meeting between the two companies. However, Walker Produce's call was prompted by Reser's earlier expression of interest in buying Idaho potatoes and its acquiescence to Mr. Christensen having his business contacts follow up with Reser's. This is not a case where Walker Produce boldly reached out to the forum purely of its own initiative. This is also not a case where Walker Produce reached out to the forum with the anticipation of doing business in the forum. From the outset, it was clear that Reser's wanted potatoes to be shipped to its Kansas facility. Further, beyond the parties' initial contact, Walker Produce had very little contact with the forum. The contract was negotiated between Idaho and Kansas and signed in Idaho. Reser's Kansas-based employee who negotiated the contract signed on Reser's behalf. The contract was performed between Idaho and Kansas. Additionally, the

PAGE 4 - OPINION & ORDER

parties provided that Idaho law governed their relationship.  All of these facts demonstrate that Walker Produce's "continuing relationship and obligations" to Reser's had very little connection to Oregon.  *Burger King Corp.*, 471 U.S. at 479 (court should take a "'highly realistic' approach" in analyzing the parties' contractual relationship).

Reser's cites *Glenn Walters Nursery, Inc. v. Kenly Farms, Inc.*, 2007 WL 845908 (D. Or. 2007) in support of its argument that jurisdiction exists.  There, an Oregon buyer contacted an Arizona seller about purchasing roses.  *Id.* at *4.  The Arizona seller had no other contact with Oregon and did not advertize in Oregon.  *Id.*  The parties entered into a contract, and the buyer purchased roses from 2004 through 2006.  *Id.* at *1.  In May 2006, the seller faxed the buyer a catalogue for the 2007 season.  *Id.*  The buyer placed orders for the 2007 and 2008 seasons, but after cancelling these orders, it filed a declaratory action in Oregon seeking a judgment that it was not in breach with the Arizona seller.  *Id.*  The court found it had personal jurisdiction over the seller because the seller had formed continuing obligations to the Oregon buyer through the parties' successive years of contracting and through its on-going solicitation for more sales.  *Id.* at *4-5.  The court found that after the Oregon buyer initially contacted the seller, the seller continually solicited further business from the buyer by sending catalogues and product information to Oregon and repeatedly contacting the buyer by telephone and mail concerning shipments, billings, and future orders.  *Id.* at *4.

Reser's argues that like *Glenn Walters Nursery*, Walker Produce's initial solicitation in Oregon is sufficient to confer personal jurisdiction.  However, the nature of Walker Produce's contact with the forum is much different than the seller's in *Glenn Walters Nursery*.  Walker Produce did not solicit Reser's in Oregon on an on-going basis.  It initially contacted Reser's in Oregon after being prompted by a third-party, but thereafter it primarily dealt with Reser's Kansas personnel.  And though the parties' contract did anticipate an on-going relationship for at least three seasons, that on-going relationship was centered in Idaho and Kansas, not Oregon. Further, unlike the seller in *Glenn Walters Nursery*, Walker Produce did not continually send

PAGE 5 - OPINION & ORDER

communications to Reser's in Oregon in an effort to solicit more business.

There are cases, though not cited by either party, suggesting solicitation in the forum is determinative. However, those cases are factually distinguishable. For example, in *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991), the Ninth Circuit stated: "[S]oliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." There, Carnival Cruise argued it was not subject to personal jurisdiction in Washington state because it was not registered to do business and had no permanent presence there. *Id.* at 379. However, the company advertized in local newspapers and provided brochures for local travel agents. *Id.* It also held periodic seminars for travel agents in Washington and paid local travel agencies a commission on proceeds from ticket sales. *Id.* These facts show Carnival Cruise was purposefully reaching out to the forum and, by its own actions, availing itself of the opportunity to do business there. Here, on the other hand, Walker Produce only reached out to Reser's after being told of Reser's interest in buying potatoes for its Kansas facility. This more passive or reactionary solicitation is of a different quality than that involved in *Shute*, particularly in light of the fact that all of the parties' subsequent interactions relevant here occurred outside of the forum.

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988), is also commonly cited for the proposition that solicitation in the forum generally confers jurisdiction over an out-of-state defendant. There, a Swiss medical clinic agreed to make false statements to the National Enquirer about Frank Sinatra in exchange for a favorable feature article about the clinic. *Id.* at 1193. Sinatra sued the clinic in California for misappropriation, and the clinic contested personal jurisdiction. The court held personal jurisdiction was established because the clinic purposefully directed its activities to the forum by using the National Enquirer article as an advertizing opportunity to solicit potential customers. *Id.* at 1196. The present case is factually

distinguishable.  First, Reser's asserts contract claims against Walker Produce, not tort claims.
Second, unlike the Swiss clinic, Walker Produce did not reach out to Oregon with the specific
goal of exploiting Oregon markets or conducting business in Oregon.  Rather, it was told Reser's
was looking for potatoes for its Kansas facility, and the parties' course of dealings clearly
demonstrate Oregon was not the focal point of their relationship.  And, as discussed above,
unlike the Swiss clinic that reached out on its own initiative to potential California customers,
Walker Produce did not initiate contact between the two companies.  On the facts presented here,
I find these are significant distinctions.

The parties also address *Naumes, Inc. v. Alimentos Del Caribe* in their briefing.  There, an
Oregon pear seller sued a Columbian buyer for breach of contract after the buyer refused to pay
for a shipment of damaged fruit.  77 F. Supp. 2d at 1160.  The Columbian company had no
contact with Oregon until the Oregon seller traveled to Columbia and solicited sales.  *Id.*  The
foreign buyer responded to the solicitation, and the parties negotiated a contract through
telephone and fax communications.  *Id.*  The pears were shipped from Oregon to California,
where the buyer took possession of them and shipped them on to Columbia.  *Id.*  The court held
the buyer was not subject to personal jurisdiction in Oregon because its contacts with the forum
were "too limited and attenuated to satisfy the minimum contacts requirement."  *Id.* at 1163-64.

Reser's argues this case supports finding jurisdiction because unlike in *Naumes* where the
parties' agreement only involved a couple of transactions within a short amount of time, here the
parties' contract called for numerous deliveries within one season and anticipated performance
for three seasons with the possibility of future extensions.  Reser's argues this difference
establishes Walker Produce had continuing obligations to an Oregon resident.  *Burger King
Corp.*, 471 U.S. at 473.  On the other hand, Walker Produce argues *Naumes* supports finding a
lack of jurisdiction, though on what specific grounds is unclear.

In my view, the factors laid out in *Naumes* favor Walker Produce.  Though the parties'
contract anticipated an on-going relationship, their course of dealings demonstrates that their

relationship had only a tangential connection to Oregon.  For example, the "origination and destination" of the goods at issue were Idaho and Kansas, respectively.  Likewise, the primary contract negotiations occurred between Walker Produce and Reser's personnel in Kansas.  And though there were a couple of brief contacts between Walker Produce and Oregon early on, as has already been addressed, those contacts are relatively insignificant in light of the parties' larger course of dealings.  Simply put, as a practical matter, the parties' relationship does not have a "*substantial* connection" to Oregon.  *Burger King Corp.*, 471 U.S. at 479 (internal quotation marks and citation omitted) (emphasis in original).  Thus, I find Walker Produce has not "purposefully avail[ed] [it]self of the privileges of conducting activities in the forum" sufficient to satisfy due process.  *Yahoo! Inc.*, 379 F.3d at 1128-29.  The motion to dismiss (#33) is GRANTED.

     IT IS SO ORDERED.


     DATED this __3rd__ day of August, 2007.


                /s/ Michael W. Mosman_____
                MICHAEL W. MOSMAN
                United States District Judge